**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 23-76** |
| | ) | |
| **DONTAIL ALLISON.** | ) | |

<u>**Opinion on Pretrial Motions**</u>

Defendant Dontail Allison is charged in a three-count indictment with possession with intent to distribute a quantity of fentanyl, a quantity of cocaine, and a quantity of cocaine base, in violation of 21 U.S.C. 841(a)(1) and 21 U.S.C. 841(b)(1)(C); possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. 922(g)(1); and possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. 924(c)(1)(A)(i). Presently before the Court are seven pretrial motions filed by Mr. Allison:

- Motion for Disclosure of *Brady/Giglio* Materials (ECF No. 45),
- Motion for Additional Discovery (ECF No. 47),
- Motion for Early Disclosure of Jencks Material (ECF No. 49),
- Motion to Compel Government to Provide Defendant with Written Statement of Uncharged Misconduct Evidence and/or Federal Rule of Evidence 404(B) Evidence and for Pretrial Production of Such Evidence (ECF No. 51),
- Motion for Court Order to Preserve Rough Notes (ECF No. 53),
- Motion to Suppress Evidence (ECF No. 55), and
- Motion for a *Franks* Hearing (ECF No. 57).

The government has filed an Omnibus Response to the Motions (ECF No. 59), to which Mr. Allison has filed a Reply (ECF No. 60).

## I.    Brief Factual Background

The factual background relevant begins with Pittsburgh Bureau of Police Officer Joseph Bucci and Detective Hodges taking up surveillance positions to observe activity on a section of East Ohio Street on January 10, 2023, at approximately 4:30 PM.  Affidavit of Probable Cause in

Support of Application for a Search Warrant to Search Red Chevrolet Trax, ECF No. 59-1, at 2. The officers had an unobstructed view of the area of East Ohio Street. *Id.* They picked this observation point because it is a location where both officers had "made numerous arrests for illegal drug sales and for firearms violations." *Id.* In addition, Detective Hodges and Officer Bucci have each spent a substantial number of hours surveilling the area of 255 East Ohio Street stating that the location is "essentially [] an open air drug market." *Id.*

On January 10, 2023, both Detective Hodges and Officer Bucci observed a male actor, whom they both recognized as Dontail Allison, "wearing a blue hat, blue and white jacket, blue jeans and tan boots." *Id.* The Affidavit states that "Detective Hodges and [Officer Bucci] know Allison to have been previously arrested multiple times." *Id.* The Affidavit also states that "Allison is observed multiple times operating a red Chevrolet Trax (PA Plate LTC8141) on Pressley Street and also East Ohio Street." *Id.*

The officers observed Mr. Allison walking through the parking lot of 255 East Ohio Street towards Stockton Avenue. *Id.* At approximately 5:35 p.m., they observed Mr. Allison meet with a woman at the intersection of Stockton Avenue and Sandusky Street. *Id.* The officers took note of the clothes the female was wearing. *Id.* The officers reported that the female appeared to hand Mr. Allison United States currency after which Mr. Allison handed the female some object. *Id.* The exchange lasted approximately one minute. *Id.* Officer Bucci states that, based on his and Detective Hodges "training and experience we believe an illegal narcotics transaction[] just occurred." *Id.*

The officers, which included Officer Bertran, then observed the female walking away from the area and putting the object that had been handed to her in her front right pants pocket. *Id.* Officers in a vehicle pulled alongside the female, who appeared to be lighting a crack pipe.

*Id.* She dropped the pipe when the officers arrived, however, Detective Hodges was able to recover a small piece of crack cocaine from the sidewalk. *Id.* The female was searched incident to arrest and two small bags of crack were found in her jacket. *Id.* A bundle of heroin was recovered from her front right pants pocket. *Id.* Detective Hodges asked her who she had met with to purchase the heroin, and the female stated it was "a black man with long dreads." *Id.*

Officer Bucci, who had remained in the surveillance position, saw Mr. Allison return to his car, the red Chevrolet Trax, and pull out onto East Ohio Street. *Id.* He reported Mr. Allison's movements to Detective Hodges, who, along with two other officers, initiated a traffic stop. *Id.* Detective Hodges told Mr. Allison the purpose of the stop. *Id.* Because of the alleged illegal narcotics transaction, Mr. Allison was detained. *Id.* Mr. Allison told Detective Hodges that he had a firearm in his hoodie. *Id.* The firearm was recovered, and officers confirmed that the firearm had been reported stolen. *Id.* Detective Hodges also recovered a bag of marijuana from Mr. Allison. *Id.*

The Chevrolet Trax was secured while the officers procured a search warrant. *Id.* In addition, another officer led her certified narcotics K-9 partner to the vehicle, and the canine alerted on the rear hatch. *Id.* Later that night, acting on an authorized search warrant, law enforcement recovered evidence of substantial amounts of controlled substances indicating possession with the intent to deliver. *Id.* Also recovered from the vehicle were four cell phones, which were later searched pursuant to a search warrant. Affidavit of Probable Cause in Support of Application for a Search Warrant to Search four cell phones, ECF No. 59-2, at 2-5.

## II.    Motion for Disclosure of *Brady*/*Giglio* Materials (ECF No. 45)

Mr. Allison seeks production of all exculpatory evidence, including all material and information that may be favorable to Mr. Allison, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), all potential impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150, 154

(1972), and any "information relating to the criminal background of any prosecution witness" pursuant to *United States v. Perdomo*, 929 F.2d 967 (3d Cir. 1991). Specifically, Mr. Allison requests disclosure of the following materials for all government witnesses and confidential informants who will testify at trial: complete military history, expected plea bargains, grants of immunity, promises made, preferential treatment, criminal "rap" sheets, a witness's statements inconsistent with expected trial testimony, other person's statements contradicting or inconsistent with another witness's expected trial testimony, offers of immunity, leniency, or preferential treatment, monies advanced to or on behalf of witnesses or confidential informants, recorded conversations of any type that do not contain incriminating information or contain denials of illegal conduct by Mr. Allison, and personnel files of all law enforcement witnesses.

"In *Brady*, the Supreme Court held that due process required that [upon request] the government produce all "exculpatory" evidence, which includes both '[m]aterials ... that go to the heart of the defendant's guilt or innocence and materials that might affect the jury's judgment of the credibility of a crucial prosecution witness.'" *United States v. Ramos*, 27 F.3d 65, 68 (3d Cir. 1994) (quoting *United States v. Hill*, 976 F.2d 132, 134-35 (3d Cir. 1992)). Once a defendant makes a request for such materials, the government is obligated to disclose such exculpatory evidence, "in time for its effective use at trial." *United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983) ("No denial of due process occurs if Brady material is disclosed to [defendants] in time for its effective use at trial").

The Supreme Court in *Giglio* extended its ruling in *Brady* to encompass impeachment evidence relating to the credibility of a government witness. *Giglio*, 405 U.S. at 154. Any inducements or rewards given to government witnesses, including but not limited to money, grants of immunity, plea bargains, promises of leniency or recommendations thereof, or

preferential treatment, would fall under impeachment evidence that must be disclosed under *Brady*. *See Higgs*, 713 F.2d at 43 ("Evidence that government witnesses have been granted immunity and/or leniency for their cooperation is clearly relevant on the issue of their credibility").

There is no indication that the government is not meeting its obligations under *Brady* or *Giglio*. In its Response, the government acknowledges its continuing obligation to provide Mr. Allison with *Brady* and *Giglio* material but argues that the government is not obligated to turn over such material at this early stage. The government asserts that there is sufficient time for the government to disclose the relevant materials so that Mr. Allison has sufficient time to make effective use of the materials at trial.

Pursuant to *Brady*, and reaffirmed in *Higgs*, the government is obligated to disclose exculpatory material in time for its effective use at trial. *See Higgs*, 713 F.2d at 44. This Court's standard Pretrial Scheduling Order typically sets a date by which the government "shall provide defense counsel with copies of any *Brady*/*Giglio* impeachment materials not previously disclosed." That date is dependent, in part, on the circumstances of the case. The preferred disclosure date is usually prior to the final pretrial conference in order to ensure sufficient time to permit the defense time to review the material and for the Court and the parties to hold an evidentiary hearing if necessary. The Motion will be denied to the extent it seeks immediate disclosure of the requested materials, and the motion will be granted to the extent that the Court will set a disclosure date once a trial date has been set.

### III.    Motion for Additional Discovery (ECF No. 47)

Mr. Allison seeks to compel the disclosure of specific Rule 16 material, as well as other discovery evidence that may be relevant to his case.

"Rule 16 of the Federal Rules of Criminal Procedure delineates the categories of information to which defendants are entitled in pretrial discovery in criminal cases, with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." *United States v. Ramos*, 27 F.3d 65, 68 (3d Cir. 1994). Federal Rule of Criminal Procedure 16(a)(1) requires the government, when requested by defendant, to disclose, within proscribed limits, the defendant's oral, written, or recorded statement (Rule 16(a)(1)(A) & (B)) and the defendant's prior record (Rule 16(a)(1)(D)).  In addition, pursuant to Rule 16(a)(1)(E) ("Documents and Objects"), upon the defendant's request, "the government must permit a defendant to inspect and to copy or photograph" said documents and objects as set forth in the Rule.  Fed. R. Crim. P. 16(a)(1)(E).  Similarly, when requested by defendant, the government must also permit the inspection, copying, or photographing of results or reports of any physical or mental examinations and scientific tests or experiments.  Fed. R. Crim. P. 16(a)(1)(F).  Finally, when requested, "the government must give to the defendant a written summary of any [expert] testimony that the government intends to use, . . .  during its case-in-chief at trial," and the written summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."  Fed. R. Crim. P. 16(a)(1)(G). In addition, the government remains under a continuing duty to disclose any additional evidence it discovers.  Fed. R. Crim. P. 16(c).  "Information Not Subject to Disclosure," is described in Rule 16(a)(2), as follows:

> Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal

government documents made by an attorney for the government or other
government agent in connection with investigating or prosecuting the case.

Fed. R. Crim. P. 16(a)(2).[1]

Mr. Allison first seeks disclosure of any information exchanged between or among the
United States (via any employee, representative, or agent) and any police departments or
agencies of the Commonwealth of Pennsylvania (via any of police department or agencies'
employee, representative, or agent), related to Mr. Allison.  Similarly, he seeks disclosure of any
information exchanged between or among the United States, the Drug Enforcement Agency,
and/or state law enforcement agencies, police departments and/or agencies located in
Pennsylvania related to Mr. Allison.  The government states that it has provided counsel with
law enforcement reports related to Mr. Allison, and the government intends to meet and confer
with defense counsel to ensure that all reports are provided to the defense.

Next, the government states that it has provided to the defense, surveillance and body-
worn camera footage relating to the January 10, 2023 investigation, and that it is not aware of
any other recorded oral conversations with Mr. Allison, relating to the pending charges.

With respect to the request for tangible evidence, records, and documents relating to the
defendant, the government states that it has provided all such information obtained during the
investigation and that the physical evidence is available for defense counsel's inspection upon
request.

---

[1] Rule 16(a)(2) also prohibits "the discovery or inspection of statements made by prospective government
witnesses except as provided in [the Jencks Act] 18 U.S.C. § 3500."  Fed. R. Crim. P. 16(a)(2).  Mr. Allison's request
for Jencks Act material is addressed separately in this Opinion.

The government states that it has also provided affidavits and/or other material submitted to a court that relates in any manner to the instant case.  The government further states that it will meet and confer with counsel to ensure that all such materials are immediately available.

Mr. Allison next requests all logs and/or pen registers relating to law enforcement surveillance of this case, evidence logs or other materials memorializing chain of custody of all evidence, lab reports relating to the evidence in this case, and all materials/evidence found as a result of any search or seizure.  The government states that, to the extent any such material has not already been provided, the government will meet and confer with defense counsel to permit inspection of the materials and evidence at a mutually convenient time.

Finally, with respect to Mr. Allison's request for all expert and scientific reports, the government states that it does intend to offer expert witness testimony at trial.  Therefore, the government is required to provide to the defense a written summary of the expert testimony that describes the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.  Fed. R. Crim. P. 16(a)(1)(G).  Because a trial date has not been set in this case, the government suggests that it be ordered to produce such evidence one month prior to the trial date.  The proposed disclosure time appears to be sufficient to permit the defense to review, and if necessary, challenge the evidence prior to trial.  Accordingly, the Court will order the government to disclose reports and written summaries of anticipated expert trial testimony one month prior to trial.  A date certain will be set in the Pretrial Scheduling Order.

In light of the government's responses to defendant's requests, which indicate that the government is complying with its discovery obligations, and that the government intends to confer with defense counsel as to the requested items, the Motion for Additional Discovery will be denied, without prejudice.

IV.     **Motion for Early Disclosure of Jencks Material (ECF No. 49)**

Mr. Allison seeks disclosure of Jencks material fourteen days prior to trial.  By statute the government need not disclose Jencks material until after the witness has testified at trial.[2]  A court can encourage the government to provide the defense with Jencks Act materials in time to avoid unnecessary delays during trial, but in this case the government already intends to provide early disclosure.  In its Response, the government states that it intends to disclose Jencks material fourteen days before trial, which should afford sufficient time to permit counsel to review the materials so as to eliminate the need for a delay in the trial.  The Motion for Jencks Act material will be granted in that the government shall disclose all Jencks material in accordance with 18 U.S.C. § 3500(b) and the government's intention to provide such materials fourteen days before trial.

V.     **Motion to Compel Government to Provide Defendant with Written Statement of Uncharged Misconduct Evidence and/or Federal Rule of Evidence 404(B) Evidence and for Pretrial Production of Such Evidence (ECF No. 51)**

Federal Rule of Evidence 404(b) is titled "Other Crimes, Wrongs, or Acts," and specifies when such evidence is prohibited, when it is permitted, and the prosecution's obligations to notify the defense that it intends to introduce such evidence.  As to "Prohibited Uses," Rule 404(b)(1) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."   Fed. R. Evid. 404(b)(1).  With respect to "Permitted Uses," Rule 404(b)(2) provides that evidence of prior bad acts "may be admissible for another purpose, such as proving

---

[2] Pursuant to the Jencks Act, no statement or report made by a government witness or potential government witness "shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."  18 U.S.C. § 3500(a).  "After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified."  18 U.S.C. § 3500(b).

motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of

accident." Fed. R. Evid. 404(b)(2). Finally, Rule 404(b)(3)'s notice requirements provide as

follows:

> **(3)  Notice in a Criminal Case**.  In a criminal case the prosecutor must:
>
> > **(A)**  provide reasonable notice of any such evidence that the prosecutor
> > intends to offer at trial, so that the defendant has a fair opportunity to meet
> > it;
> >
> > **(B)**  articulate in the notice the permitted purpose for which the prosecutor
> > intends to offer the evidence and the reasoning that supports the purpose;
> > and
> >
> > **(C)**  do so in writing before trial – or in any form during trial if the court,
> > for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b)(3).  The United States Court of Appeals for the Third Circuit requires that

Rule 404(b) evidence may only be introduced at trial if the government "can demonstrate its

admissibility." *United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017).  Admissibility of

"evidence of uncharged crimes or wrongs must (1) have a proper evidentiary purpose [that is, the

evidence is proffered for a non-propensity purpose]; (2) be relevant [pursuant to Rule 402]; (3)

satisfy Rule 403 [in that its probative value must not be substantially outweighed by its potential

for causing unfair prejudice]; and (4) be accompanied by a limiting instruction (where requested)

about the purpose for which the jury may consider it." *United States v. Green*, 617 F.3d 233,

240 (3d Cir. 2010).

What constitutes "reasonable notice" of such material depends on "the circumstances and

complexity of the prosecution." *United States v. Johnson*, 218 F. Supp. 3d 454, 462 (W.D. Pa.

2016).  In general, courts have found that, "reasonable notice" under Rule 404(b) is in the range

of seven to ten days or one to two weeks prior to trial. *United States v. Long-Parham*, 183 F.

Supp. 3d 746, 750 (W.D. Pa. 2016); *United States v. Buckner*, 2020 U.S. Dist. LEXIS 5485, at

*14–15 (M.D. Pa. Jan. 13, 2020).  There is also precedent for ordering disclosure of such evidence thirty days in advance of trial, when the circumstances and complexity of the case require such earlier disclosure.  *United States v. Coles*, 511 F. Supp. 3d 566, 593 (M.D. Pa. 2021)[3].  Thus, to determine when disclosure should occur depends on "the circumstances and complexity of the prosecution."  *Johnson*, 218 F. Supp. 3d at 462).  Here, the government has not yet identified the prior bad acts it might want to present at trial.  The government also suggests a disclosure date fourteen days prior to trial.  This date appears to be sufficiently in advance of trial for the defense to make effective use of the material, and to request an evidentiary hearing prior to trial if necessary.   Accordingly, Mr. Allison's Motion for Pretrial Disclosure of uncharged misconduct evidence and Rule 404(b) evidence will be granted to the extent that the government must disclose such material fourteen days prior to trial, and the Motion is otherwise denied.

### VI.   Motion for Court Order to Preserve Rough Notes (ECF No. 53)

Mr. Allison requests that the Court order all involved law enforcement who participated in the investigation of this case retain and preserve their rough notes.  The government states that it has already advised law enforcement officers involved in the investigation of this case to preserve their rough notes.  The government further states that it will disclose such materials to defense counsel approximately fourteen days prior to trial.  Therefore, pursuant to *United States v. Ramos*, 27 F.3d 65, 68 (3d Cir. 1994), *United States v. Ammar*, 714 F.2d 238 (3d Cir. 1983), and *United States v. Vella*, 562 F.2d 275 (1977), the Motion for Court Order to Preserve Rough Notes will be granted.  The government is ordered to preserve rough notes consistent with this

---

[3] In *Coles*, the District Court concluded: "Given the circumstances and complexity of this prosecution, and the anticipated volume of motions in limine, we will adopt [defendant's] proposal and order the government to notify all defendants whether it intends to offer evidence under Rule 404(b) or Rule 609(b) at least 30 days before trial. *United States v. Coles*, 511 F. Supp. 3d 566, 593 (M.D. Pa. 2021).

Opinion and its obligations under *Vella* and *Ammar*.  The Court further notes that the government intends to produce relevant rough notes fourteen days prior to trial.

VII.   **Motion to Suppress Evidence (ECF No. 55) and Motion for a *Franks* Hearing (ECF No. 57)**

As recited above, while conducting surveillance, officers observed what they believed to be an illegal hand to hand drug transaction.  When encountering the apparent buyer of the drugs, officers confirmed that she was in possession of illegal drugs.  Significantly, she had heroin in her right front pants pocket, which is the same pocket the officers saw her place the item she had just received from the seller.  She confirmed to officers that she had been engaged in an illegal drug transaction, and she described the person who sold her the heroin as, a black man with long dreads.  That description fit Mr. Allision.  Law enforcement then stopped Mr. Allison as he began to leave the area in his vehicle.  He was detained and searched.  Said events led to Officer Bucci drafting an Affidavit in support of a search warrant for the vehicle.  The seizing of four cell phones from the vehicle led to Officer Bucci drafting a second search warrant, nearly identical to the first, to search the cell phones.  Affidavit of Probable Cause in support of Application for a Search Warrant to search the Red Chevrolet Trax, ECF No. 59-1, at 2-3; and Affidavit of Probable Cause in support of Application for a Search Warrant to search four cell phones, ECF No. 59-2, at 2-5.

### A.  Motion to Suppress

Mr. Allison has filed a Motion to Suppress all evidence obtained from his person and all evidence obtained from the Chevrolet Trax (and by extension all evidence obtained from the cell phones).  He argues that both searches and seizures were conducted in violation of the United States Constitution.  With respect to evidence obtained from Mr. Allison's person he argues that he was illegally detained and arrested without reasonable suspicion or probable cause.

Therefore, he argues that evidence obtained from his person was obtained in violation of the law. He also argues that law enforcement exceeded the scope of a pat-down search, that the plain view exception does not apply, and that Mr. Allison did not consent to the search.

With respect to the traffic stop and subsequent seizure of evidence from the vehicle, Mr. Allison argues that the traffic stop was initiated without reasonable suspicion or probable cause, the vehicle was stopped without first obtaining a search warrant, the traffic stop was pretextual, and that Mr. Allison did not consent to the search of the vehicle. Finally, with respect to the search warrants obtained by law enforcement (one for the vehicle and one for the cell phones obtained from the vehicle), Mr. Allision argues that the supporting affidavits do not contain sufficient probable cause.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV. In *Terry v. Ohio*, the Supreme Court held that a brief investigatory warrantless search, based on less than probable cause, is permissible under the Fourth Amendment where a police officer has a reasonable, articulable suspicion that criminal activity is afoot. <u>Terry</u>, 392 U.S. 1, 30 (1968), *see also United States v. Yamba*, 506 F.3d 251, 255 (3d Cir. 2007). The Supreme Court has "described reasonable suspicion simply as 'a particularized and objective basis' for suspecting the person stopped of criminal activity." *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (quoting *United States v. Cortez*, 449 U. S. 411, 417-418 (1981)). Reasonable suspicion is more than a hunch but less than probable cause. *United States v. Green*, 897 F.3d 173, 183 (3d Cir. 2018). In evaluating the reasonableness of a *Terry* stop, the Court will look at the totality of the circumstances. *United States v. Valentine,* 232 F.3d 350,

353 (citing *United States v. Sokolow*, 490 U.S. 1, 8 (1989) (citations omitted). "The Supreme Court has stressed that the totality of the circumstances standard enables 'officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *United States v. Thompson*, 772 F.3d 752, 759 (3d Cir. 2014) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). In considering a specific set of circumstances, "due weight must be given . . . to the specific reasonable inferences which [a police officer] is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27.

Turning to the present case, based on Officer Bucci's and Detective Hodges' own observations, coupled with their experience, training, and knowledge, the officers possessed probable cause, and at a minimum, reasonable suspicion, to believe that Mr. Allison had engaged in criminal activity and that evidence of the crime would be found on his person or in his vehicle. *Ornelas*, 517 U.S. at 696 (probable cause exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found") (citing *Brinegar v. United States*, 338 U. S. 160, 175-76 (1949) and *Illinois v. Gates*, 462 U. S. 213, 238 (1983)). Here, the officers established a surveillance location on East Ohio Street, which they both knew from experience is a location where illegal drug transactions frequently occur. During their surveillance, both officers observed and recognized Dontail Allison. The officers knew that Mr. Allison frequented the area being surveilled, they knew that he drove a red Chevrolet Trax, and they knew that he had been arrested previously. The officers continued to observe Mr. Allison while he made a hand-to-hand exchange with a female. They saw the female receive an item from Mr. Allison, which she placed in her right front pants pocket as she left Mr. Allison.

14

Based on their experience, the officers believed that they had observed an illegal drug transaction between Mr. Allison and the female.  This belief was reinforced after law enforcement interacted with the female shortly after the transaction.  When the officers encountered her they saw that she was smoking crack cocaine.  She dropped the crack pipe and Detective Hodges recovered what he knew to be crack cocaine from the ground.  When searching the female, the officers found a bundle of heroin in her right front pants pocket.  The female then told the officers that she purchased the heroin from a person she described as "a black man with long dreads."  Mr. Allison, whom the officers had already observed, matched the description of a black man with long dreads.

Officer Bucci, who had maintained his surveillance position of Mr. Allison, observed him enter the red Chevrolet Trax and start to leave the area.  Shortly thereafter, Mr. Allison's vehicle was stopped by law enforcement and Mr. Allison was detained based on suspicion of engaging in an illegal drug transaction.  The information above, combined with the officers' training and experience, is sufficient to support a belief by law enforcement that evidence of an illegal drug transaction would be found on Mr. Allison's person and/or in his vehicle.  The fact that Mr. Allison also told the officers that he possessed a firearm (which had been reported stolen) and that marijuana was recovered from Mr. Allison, provided additional support for the application to procure a search warrant for the vehicle.

Mr. Allison was legally detained and arrested based on probable cause that he had conducted an illegal drug transaction.  Therefore, all evidence obtained from Mr. Allison's person was obtained lawfully.  Mr. Allison's various arguments that law enforcement exceeded the scope of a pat-down search, that the plain view exception does not apply, and that Mr.

Allison did not consent to the search, are inapplicable because law enforcement's conduct was lawful and Mr. Allison himself reported to the officers that he had a firearm in his hoodie.

With respect to the vehicle, Mr. Allison argues that the vehicle was stopped without law enforcement first obtaining a search warrant, that the traffic stop was pretextual, and that Mr. Allison did not consent to the search of the vehicle. These arguments are also inapplicable under the facts presented in this case. Specifically, law enforcement, who had probable cause to believe that Mr. Allison had committed a crime while on foot, conducted a traffic stop only because Mr. Allison was in his vehicle. Law enforcement did not stop Mr. Allison based on a real or pretextual traffic violation. The stop was conducted solely based on the prior observations of an apparent drug transaction. Based on the officer's observation that criminal activity was afoot, there was no need for law enforcement to first obtain a search warrant for the vehicle before stopping the vehicle and detaining Mr. Allison. Finally, Mr. Allison's consent to search is irrelevant because law enforcement obtained a search warrant for the vehicle; therefore, they did not search the vehicle over Mr. Allison's objection.

Considering the totality of the circumstances, the Court finds that law enforcement was justified in conducting the traffic stop of Mr. Allison, in detaining and searching Mr. Allison, in procuring a search warrant for the vehicle, and in subsequently procuring a search warrant for the four cell phones. Accordingly, the Motion to Suppress Evidence will be denied.

### B.  Motion for a *Franks* Hearing (ECF No. 57)

Next, Mr. Allision argues that the affidavits in support of the two search warrants (one for the vehicle and one for the cell phones obtained from the vehicle) contained false, unreliable, and/or misleading information (which information was illegally obtained) and/or contained material omissions that did not fully apprise the issuing magistrate judge of the true nature of the information. Specifically, he avers that Officer Bucci inserted a material misrepresentation about

16

the reported identification of Mr. Allision by the female who had been observed in the hand-to-hand transaction with Mr. Allison.  Conversely, Officer Bucci is  alleged to have recklessly omitted that the female had failed to provide any identifying information about Mr. Allison. Therefore, he argues that the warrants are invalid under *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), and therefore, he seeks a *Franks* Hearing.

"The Fourth Amendment prohibits the intentional or reckless inclusion of a material false statement (or omission of material information) in a search-warrant affidavit." *United States v. Pavulak*, 700 F.3d 651, 665 (3d Cir. 2012), citing *United States v. Yusuf*, 461 F.3d 374, 383–84 (3d Cir. 2006). "To obtain a *Franks* hearing, a defendant must establish (1) that a warrant application contained false statements made with reckless disregard for the truth and (2) that the remaining truthful statements, standing alone, do not establish probable cause." *United States v. Desu*, 23 F.4th 224, 234 (3d Cir. 2022) (citing Franks, 438 U.S. at 171–72). "The defendant must prove his allegations by a 'substantial preliminary showing.'" *Desu*, 23 F.4th at 234 (quoting *Franks*, 438 U.S. at 171–72). "To carry his burden, [the defendant] cannot 'rest on mere conclusory allegations or a 'mere desire to cross-examine,' but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses.'" *Desu*, 23 F.4th at 234 (quoting *Yusuf*, 461 F.3d at 383 n.8) (quoting *Franks*, 438 U.S. at 171). "If a defendant succeeds in obtaining a hearing, he must then prove the allegations by a 'preponderance of the evidence' at the hearing itself in order for a judge to suppress evidence obtained as a result of the warrant." *Desu*, 23 F.4th at 234 (quoting *Franks*, 438 U.S. at 156).

The United States Court of Appeals for the Third Circuit "categorize[s] false statements as 'omissions' or 'assertions.' " *Desu*, 23 F.4th at 234 (quoting *Wilson v. Russo*, 212 F.3d 781,

783 (3d Cir. 2000)). " '[A]ssertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting.' " *Desu*, 23 F.4th at 234 (quoting *Wilson*, 212 F.3d at 783). " '[O]missions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know.' " *Desu*, 23 F.4th at 234 (quoting *Wilson*, 212 F.3d at 783). If a defendant succeeds in establishing that that there were false assertions or reckless omissions of fact, the defendant must then demonstrate that such assertions or omissions were "material, or necessary, to the finding of probable cause." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3rd Cir. 1997). Materiality is determined by "excis[ing] the offending inaccuracies and insert[ing] the facts recklessly omitted, and then determine[ing] whether or not the 'corrected' warrant affidavit would establish probable cause." *Wilson*, 212 F.3d at 789 (citing *Sherwood*, 113 F.3d at 399).

With respect to this case, a "reasonable person" trying to establish probable cause for a warrant to search a vehicle, operated by a person the police had just detained for a suspected illegal narcotics transaction, "would know that a judge" reviewing the affidavit "would want to know" whether law enforcement obtained credible information that the operator of the vehicle had committed a crime, that evidence of the crime would likely be found in the vehicle, and that the operator of the vehicle is in fact the person the officers suspected of committing the crime. *Desu*, 23 F.4th at 234.

Here, the Affidavits inform the reviewing magistrate judge that both Officer Bucci and Detective Hodges personally knew who Dontail Allison was, they knew what he looked like, they knew what vehicle he was associated with, and they knew that he had previously been arrested. The Affidavits explain that both Officer Bucci and Detective Hodges observed Mr. Allison in the East Ohio Street area on January 10, 2023, and they both watched Mr. Allison

engage in a hand-to-hand transaction with a female.  Such information sufficiently informs the

reviewing judge that Mr. Allison, a person known to the affiant, is in fact the person observed

engaging in a hand-to-hand transaction.

Here, Officer Bucci included additional information in the Affidavit which corroborated

the officers' belief that an illegal drug transaction had occurred and that the actor in question was

Dontail Allison.  The Affidavits inform the reviewing magistrate judge that the female, who had

engaged in the transaction with Mr. Allison, was observed leaving the scene.  She was stopped

by law enforcement and was found to be in possession of illegal narcotics.  Specifically, she was

smoking crack cocaine and she had a bag of heroin in her right front pocket.  She confirmed to

police that she had just received the heroin from a black man with long dreads.  She offered no

other identifying information to the officers and did not provide a name.  Consistent with the

female's report, the Affidavit states only that she described the person who she engaged in a drug

transaction with as "a black man with long dreads."  This description matched Dontail Allison's

skin and hair.  Thus, the reviewing judge was told that an eyewitness and participant to the

transaction confirmed that it was an illegal drug transaction and that the male involved had

features matching Dontail Allison.  Combined with Officer Bucci's averments concerning law

enforcement's knowledge of Mr. Allison and the particulars of their surveillance on the day of

the transaction, the reviewing judge was provided with reliable information that Mr. Allison had

committed a crime and that he was the operator of the vehicle sought to be searched.

Mr. Allison argues that

> the affidavit contains material misrepresentations concerning the identification of
> Mr. Allison. The officers involved in Mr. Allison's arrest claim that an alleged
> customer identified him as the person that sold her narcotics. However, the body
> worn camera footage produced during discovery depicts the law enforcement
> officers' interactions with the alleged customer and **the alleged customer does
> not provide any information whatsoever identifying Mr. Allison as the**

> **person who sold her drugs**. It is respectfully submitted that the identification information was inserted into the affidavits of probable cause used to support the search warrants in order to mislead the reviewing magistrate judge into believing that probable cause existed to search pursuant to the search warrants.

ECF No. 57, at ¶ 5 (emphasis added).  Mr. Allison argues that "the alleged customer [did] not provide *any information* whatsoever identifying Mr. Allison as the person who sold her drugs."  *Id.* (emphasis added).  Mr. Allison argues that the female did not provide any information whatsoever identifying Mr. Allison as the person who sold her drugs.  His assertion conflicts with the Affidavits, in which it is stated that the female told Detective Hodges that the man she engaged in the transaction with was "a black male with long dreads."

The Court finds that it is not necessary to review the body camera video to hear what the female said, or did not say, with respect to providing Detective Hodges with a description of the person she had just bought heroin from.  First, the Affidavit writer, Officer Bucci, is not the person who interacted with the female, as he maintained his surveillance position while Detective Hodges, Officer Davies, and Officer Bertran stopped the female as she walked away after the transaction.  *Id.*  Thus, the insertion of the female's description of Mr. Allison, was not inserted into the Affidavit by Officer Bucci "with reckless disregard for the truth," as there is no evidence that Officer Bucci, who presumably was told by Detective Hodges what the female had said, had "obvious reasons to doubt the truth of what he . . . is asserting."  *Desu*, 23 F.4th at 234.  With regard to the alleged omission of the fact that the female did not provide any information to identify Mr. Allison, such was not recklessly omitted by Officer Bucci, as he had no reason to doubt Detective Hodges' recounting of the interview with the female.  *Id.*

Even assuming that the Affidavits do contain a false assertion and reckless omission, the Affidavits still properly contain probable cause to search the vehicle and the cell phones.

Specifically, the alleged false assertion of fact and the alleged reckless omission of fact, as explained below were not "material, or necessary, to the finding of probable cause." *Sherwood*, 113 F.3d at 399.

To determine materiality, the Affidavit is edited to remove the reference that the female identified Mr. Allison as "a black male with long dreads" and to add in the fact, that the female did not provide any description of Mr. Allison. *Wilson*, 212 F.3d at 789. The relevant Affidavit paragraphs regarding identification of Mr. Allison, with the omissions struck out and the additions highlighted in bold, would read as follows:

> While conducting surveillance, Detective Hodges and I observed a known male, Dontail Allison wearing a blue hat, blue and white jacket, blue jeans and tan boots. Detective Hodges and I know Allison to have been previously arrested multiple times PA CC 19—13(a)(3)) PWID ["*possession with intent to distribute"*]. Allison is observed multiple times operating a red Chevrolet Trax (PA Plate LTC8141) on Pressley Street and also East Ohio Street.

> At 1734 hours, Officers observe Allison walking through the parking lot of 255 East Ohio Street towards Stockton Ave. . . .

> At 1735 hours, Officers observe Allison meet with a female later identified as [-----] at the intersection of Stockton Ave and Sandusky Street. [*description of female, and detailed description of the apparent hand-to-hand drug transaction, is provided*]. Based on your Affiant's and Detective Hodges training and experience we believe an illegal narcotics transaction just occurred. . . . .

> At 1740 hours, Detective Hodges, Officer Davies, and Officer Bertran observed [*the female*] who was believed to be engaged in the illegal narcotics transaction at the intersection of South Commons and East Commons. [*paragraph continues with details of law enforcement's engagement with the female*]. Detective Hodges then asked [*the female*] who she met up with when purchasing the illegal narcotics ~~which she stated, "a black male with long dreads"~~ **but she had no information to provide as to the identity of the person she met up with,** or **she did not identify Mr. Allison as the person who she met up with**.

January 9, 2018 Affidavit, 1:18-mj-1 & 1:18-mj-2 (strikethroughs and bold emphasis added).

The Court finds that the above edits to the Affidavits do not affect the probable cause determination. The Court also has no hesitation in concluding that a reasonable judge, after

evaluating the Affidavits with the above additions and deletions, would determine that probable

cause had been established.  Mr. Allison's present *Franks* complaint, that the female had not

identified him, is subsumed by the Affidavits' averments showing that Detective Hodges and

Officer Bucci were familiar with Mr. Allison before they began surveillance and recognized him

engage in a transaction with the female.  They also initially identified Mr. Allison on their own

during surveillance before the transaction occurred.  Law enforcement maintained visual

surveillance of Mr. Allison at all times before he entered his vehicle.  Moreover, all events that

the female was involved in, from the hand-to-hand transaction with Mr. Allison to law

enforcement's encounter with her, were observed by several members of law enforcement, thus

the alleged reckless statement and reckless omission were unnecessary to the probable cause

determination.

      The Court finds that Mr. Allison has not made a substantial preliminary showing that

there are material misrepresentations or omissions of fact to justify a hearing pursuant to *Franks*

*v. Delaware*, 438 U.S. 154 (1978).  Accordingly, Mr. Allison's Motion for a *Franks* hearing will

be denied.

## <u>ORDER</u>

      AND NOW, this 11th day of July 2024, for the reasons explained above, Dontail

Allison's Motions are resolved as follows:

1. The Motion for Disclosure of *Brady/Giglio* Materials, ECF No. 45, is DENIED to the
   extent it seeks immediate disclosure of the requested materials. The Motion is
   GRANTED to the extent that the Court will set a disclosure date time to permit the
   effective use of said materials at trial. Said deadline will be set in conjunction with
   setting the trial date.

2. The Motion for Additional Discovery, ECF No. 47, is GRANTED only insofar as the
   government is ordered to disclose reports and written summaries of anticipated expert
   trial testimony one month prior to trial.  The Motion is otherwise DENIED without
   prejudice.

3. The Motion for Early Disclosure of Jencks Act material, ECF No. 49, is GRANTED in that the government shall disclose all Jencks material in accordance with 18 U.S.C. § 3500(b) and in accordance with the government's intention to provide such materials fourteen days before trial.

4. The Motion to Compel Government to Provide Defendant with Written Statement of Uncharged Misconduct Evidence and/or Federal Rule of Evidence 404(B) Evidence and for Pretrial Production of Such Evidence, ECF No. 51, is GRANTED insofar as the government shall disclose such material fourteen days prior to trial. The Motion is otherwise DENIED.

5. The Motion for Court Order to Preserve Rough Notes, ECF No. 53, is GRANTED in that the government shall preserve rough notes consistent with this Opinion and its obligations under *Vella* and *Ammar*. .

6. The Motion to Suppress Evidence, ECF No. 55, is DENIED.

7. The Motion for a *Franks* hearing, ECF No. 57, is DENIED.

Marilyn J. Horan
United States District Judge